Jonathan V. O'Steen, Esq. – State Bar #024043
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona  85013-3424
(602) 252-8888
(602) 274-1209 FAX
josteen@vanosteen.com

W. Roger Smith, Esq. – *Pro Hac Vice* Pending
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama  36103-4160
(334) 269-2343
(334) 954-7555 FAX
Roger.Smith@beasleyallen.com
**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Taylor, individually and on behalf of O.V., a minor, | NO. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| Wal-Mart Stores, Inc., a Delaware corporation, Walgreens Boots Alliance, Inc., a Delaware corporation, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Frances Taylor brings this Complaint for damages against Wal-Mart Stores, Inc. and Walgreens Boots Alliance, Inc., in her individual capacity and on behalf of her minor child, O.V., as her general guardian pursuant to FED.R.CIV.P. 17(c)(1)(A).  In support of this Complaint, Plaintiffs allege the following:

1. Plaintiff Frances Taylor ("Plaintiff Mother") brings this action for injuries she and her minor child, O.V., ("Plaintiff Minor") (hereinafter collectively "Plaintiffs") have suffered arising out of the failure of Defendants Wal-Mart Stores, Inc. (hereinafter "Defendant Walmart"), and Walgreens Boots Alliance, Inc. (hereinafter "Defendant Walgreens"), to warn about the dangers of prenatal exposure to Paracetamol, also known as Acetaminophen (hereinafter "the APAP Products").  As a result, Plaintiffs have suffered permanent injuries and significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

2. Defendants Wal-Mart and Walgreens entirely failed their duties to adequately warn of the hazards of prenatal exposure to APAP, which was a direct and proximate cause of Plaintiffs' injuries and associated damages.

## **PARTIES**

3. At all material times, Plaintiffs have been citizens and residents of Pima County, Arizona, and the United States.

4. Defendant Wal-Mart is incorporated in the State of Delaware, with its principal place of business in Arkansas.

5. Defendant Wal-Mart is a multinational company involved in the research, development, testing, manufacture, labeling, production, marketing, promotion, and/or sale of APAP through its over-the-counter store brand, "Equate" (the "APAP Products.")

6.  Defendant Wal-Mart is individually, and jointly and severally liable to Plaintiffs for damages they suffered arising from Defendant Walmart's design, manufacture, marketing, labeling, distribution, sale, and placement of the defective Walmart APAP Products into the market, effectuated directly and indirectly through its agents, servants, employees, and/or owners, all acting within the course and scope of its agencies, services, employments, and/or ownership.

7.  Defendant Wal-Mart is vicariously liable for the acts and/or omissions of its employees and/or agents, who were at all material times acting on behalf of Defendant Wal-Mart and within the scope of its employment or agency.

8.  Defendant Walgreens is incorporated in the State of Delaware with its principal place of business in Illinois.

9.  Defendant Walgreens is a multinational company involved in the research, development, testing, manufacture, labeling, production, marketing, promotion, and/or sale of APAP through its over-the-counter store brand, Walgreens Pain Reliever – Acetaminophen (the "APAP Products.")

10. Defendant Walgreens is individually, and jointly and severally liable to Plaintiffs for damages they suffered, arising from Defendant Walgreen's design, manufacture, marketing, labeling, distribution, sale, and placement of the defective Walgreens APAP Products into the market, effectuated directly and indirectly through its agents, servants, employees, and/or owners, all

acting within the course and scope of its agencies, services, employments, and/or ownership.

11. Defendant Walgreens is vicariously liable for the acts and/or omissions of its employees and/or agents, who were at all material times acting on behalf of Walgreens and within the scope of its employment or agency.

12. Defendant Walgreens and Defendant Wal-Mart are hereinafter collectively referred to as "Defendants."

13. The defective APAP Products manufactured and marketed by Defendants are hereinafter collectively referred to as "the APAP Products."

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiffs and Defendants. *See supra* ¶¶ 3–4.

15. The amount in controversy exceeds $75,000.00.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

17. Defendants have and continue to conduct substantial business in the State of Arizona and in this District, distribute the APAP Products in this District, receive substantial compensation and profits from sales of the APAP Products in this District, and have made material omissions and

misrepresentations and breaches of warranties in this District so as to subject Defendants to *in personam* jurisdiction in this District.

18. Defendants are registered to transact business in Arizona.

## FACTS COMMON TO ALL COUNTS

### APAP Is Marketed as the Safe Pain Reliever for Pregnant Women, but APAP Can Cause ASD/ADHD in Children

19. APAP is widely used by pregnant women to relieve pain during the term of their pregnancy.

20. APAP was initially discovered in the late 1800s.

21. APAP was introduced to the US market in 1955 as the first aspirin-free pain reliever.   APAP was originally marketed and sold as a product to reduce fever in children, packaged like a red fire truck with the slogan "for little hotheads."

22. APAP is sold in billions of units annually in North America alone.

23. APAP has long been marketed as the safest and the *only* appropriate over-the-counter pain relief drug on the market for pregnant women.

24. More than 65% of women in the United States use APAP Products during pregnancy.

25. Based upon information and belief, a majority of women who use the APAP Products during pregnancy do so electively for the treatment of headaches, muscle pain, back pain, and infection.

26. These pregnant women electively choose to take APAP because Defendants have marketed the APAP Products as a safe pain reliever for pregnant women.

27. However, experimental and epidemiological research shows that prenatal exposure to APAP alters fetal development, which significantly increases the risks of neurodevelopmental disorders, including, but not limited to, autism spectrum disorder ("ASD") and attention-deficit/hyperactivity disorder ("ADHD.")

28. Undisturbed development of the human brain in utero is vital to the health and wellness of a child's development.  The human brain is vulnerable and extremely sensitive in utero.  During this sensitive time-period in utero, certain chemicals have been found to cause permanent brain injury at low exposure levels.

29. Once ingested by the mother, APAP is known to readily cross the placenta and blood-brain barrier.

30. ASD is a serious neurological and developmental disorder that affects how people interact with others, communicate, learn, and behave.

31. There are three functional levels of ASD, with Level 1 requiring support with activities of daily living, Level 2 requiring substantial support with activities of daily living, and Level 3 requiring very substantial support with activities of daily living.

32. Treatments for ASD include behavioral management therapy, cognitive behavior therapy, joint attention therapies, medications, occupational therapy, physical therapy, social skill training, and speech-language therapy. Treatment for ASD lasts a lifetime, as there is no cure.

33. In or around 2018, the Center for Disease Control and Prevention ("CDC") found that 1 in 44 (2.3%) 8-year-old children have been diagnosed with ASD.

34. This represents an increase from a prior CDC finding that 1 in 68 U.S. children born in 2002 have ASD, which already represented a more than a 100% increase compared with children born a decade prior.

35. Parental awareness and changes in diagnoses do not account for the rapid rise in these diagnoses.

36. Rather, neurotic exposures, such as prenatal APAP exposure, explain a trending increase in diagnosis.

37. For years, the scientific community has published studies showing that prenatal ingestion of APAP can cause ASD and ADHD.

38. For instance, since 2013, there have been six European birth cohort studies, examining over 70,000 mother-child pairs, showing the association between prenatal use of APAP and ASD and ADHD.

39. At this time, the overall body of scientific evidence shows that prenatal use of APAP can cause ASD and ADHD in the child.

40. During all relevant times herein, Defendants were engaged in the business of manufacturing and selling the APAP Products in the United States, and the

weight of the scientific evidence available showed prenatal exposure to APAP significantly increases the risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

41. The scientific evidence regarding the risks of in utero exposure of APAP was available to Defendant, and Defendants knew or should have known that prenatal use of APAP can cause ASD or ADHD.

42. Based on information and belief, Defendants have concealed the prenatal APAP exposure-neurodevelopmental link from consumers, like Plaintiff Mother, by failing to include information regarding the risk in the product labeling for the APAP products.

43. Moreover, despite knowing that prenatal use of APAP products can cause ASD or ADHD, Defendants continue to market the APAP Products as the safe pain reliever for pregnant women, making mothers believe they are choosing a safe drug for even minor aches, pains, and headaches.

**Plaintiff Mother Took APAP Products While Pregnant and it Caused ASD in Plaintiff Minor**

44. Plaintiff Mother began using the APAP Products in or around November 2018 through January 2019 when she was pregnant with Plaintiff Minor.

45. Over the course of her pregnancy, and during each trimester, Plaintiff Mother took the APAP Products almost every day to address minor aches and pains in her lower extremities.

46. Plaintiff Mother believed it was safe for her to take the APAP Products during her pregnancy.

47. There is no warning on the APAP Products' labels specifically addressing the risks of ASD if a mother ingests the APAP Products while pregnant.

48. Had Plaintiff Mother known of the risk of taking the APAP Products while pregnant, specifically that it could cause ASD in Plaintiff Minor, she would not have taken the APAP Products.

49. Plaintiff Minor was born on August 25, 2019.

50. Sometime thereafter, Plaintiff Minor became noticeably non-verbal, non-communicative, anti-social, began to rock back and forth frequently, and has been unable to become toilet trained.

51. Plaintiff Minor was ultimately diagnosed with ASD by his pediatrician in or around April 2022.

52. Plaintiff Minor's ASD puts an incredible strain on Plaintiff Mother and their family.

53. Plaintiff Minor requires an immense amount of assistance and is unable to function without constant supervision.

54. Plaintiff's Mother fears for Plaintiff Minor and experiences a lot of stress and anxiety due to the challenges associated with Plaintiff Minor's ASD.

## CLAIM ONE
## STRICT LIABILITY – FAILURE TO WARN

55. Plaintiffs incorporate by reference the allegations in all prior paragraphs.

56. At the time of Plaintiffs' injuries, the APAP Products were defective and unreasonably dangerous to foreseeable consumers, including Plaintiff Mother, because they lacked an adequate warning.

57. At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, and promoting the APAP Products, which were defective and unreasonably dangerous to consumers, including Plaintiff Mother, because they did not contain adequate warnings or instructions concerning the dangerous characteristics of ingesting APAP Products during pregnancy. These actions were under the ultimate control and supervision of Defendants.   At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, labeled, promoted, and sold the APAP Products within this District and aimed the marketing at the ultimate consumer.  Defendants were at all relevant times involved in the retail and promotion of the APAP Products marketed and sold in this District.

58. Defendants had a duty to warn of the risks associated with the use of the APAP products.

59. The APAP Products ingested by Plaintiff Mother during pregnancy were in the same or substantially similar condition as they were when they left possession of Defendants.

60. Defendants expected and intended the APAP Products to reach users such as Plaintiff Mother in the condition in which the APAP Products were sold.

61. Plaintiff Mother did not materially alter the APAP Products prior to ingestion.

62. Plaintiff Mother ingested the APAP Products as indicated on the APAP Products' labels.

63. Plaintiff Mother was unaware of the defects and dangers of the APAP Products and was unaware that prenatal exposure increases the risk of brain and behavioral development of children in utero.

64. The labels on the APAP Products lack any warning specific to pregnant women.  The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff Mother to utilize the products safely and with adequate protection or decide to not ingest the APAP Products at all.

65. This alleged failure to warn is not limited to the information contained on the APAP Products' labeling.  Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with APAP Products through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources.  But Defendants did not disclose these known risks through any medium.

66. At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, and supply the APAP Products; provide proper warnings for the APAP Products; and take such steps as necessary to ensure the APAP

Products did not cause users and consumers, and their children, to suffer from unreasonable and dangerous risks.  Defendants had a continuing duty to warn Plaintiff Mother of dangers associated with the APAP Products. Defendants, as manufacturers, sellers, and/or distributors of pharmaceutical medication, are held to the knowledge of an expert in the field.

67.  At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of the APAP Products because Defendants knew or should have known of the unreasonable risks of ASD associated with prenatal exposure to and/or the use of such products.

68.  At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety of the APAP Products, or to minimize the dangers to consumers of the APAP Products and to those who would foreseeably use or be harmed by the APAP Products, including Plaintiffs.

69.  Defendants failed to adequately warn consumers, like Plaintiff Mother, about the significant increased risk of neurodevelopmental disorders in children exposed to the APAP Products prenatally, including but not limited to ASD.

70.  Defendants failed to adequately inform reasonably foreseeable consumers, like Plaintiff Mother, of the proper usage of the APAP Products.

71.  Even though Defendants knew or should have known that the APAP Products posed a grave risk of harm to Plaintiff Minor, Defendants failed to

exercise reasonable care to warn of the dangerous risks associated with use and prenatal exposure.

72. Plaintiff Mother was exposed to the APAP Products without knowledge of their dangerous characteristics.

73. At all relevant times, Plaintiff Mother used and/or was exposed to the use of the APAP Products while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

74. Plaintiff Mother could not have reasonably discovered the defects and risks associated with the APAP Products prior to or at the time of Plaintiff Mother consuming the APAP Products.  Plaintiff Mother relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with using the APAP Products.

75. If Plaintiff Mother had been properly warned of the defects, dangers, and risks associated with prenatal exposure to the APAP Products, Plaintiff Mother would have utilized the APAP Products safely and with adequate protection or would have decided to not ingest the APAP Products at all.

76. Defendants are liable to Plaintiffs for injuries caused by Defendants' negligent or willful failure, as described above, to provide adequate warnings or other relevant information and data regarding the appropriate use of the APAP Products and the risks associated with the use of APAP Products.

77. As a direct and proximate result of Defendants placing defective APAP Products into the stream of commerce, and Plaintiff Mother's ingestion of the

APAP Products during pregnancy, Plaintiff Minor was exposed to APAP Products prenatally, causing him to develop ASD.

78. As a direct and proximate result of Defendants placing defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

## CLAIM TWO
## NEGLIGENCE

79. Plaintiffs incorporate by reference the allegations in all prior paragraphs.

80. Although Defendants had a duty to use reasonable care in testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, promoting, and preparing written instructions and warnings for the APAP Products, Defendants failed to do so.

81. Defendants, directly or indirectly, caused the APAP Products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff Mother.   At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, promoted, and sold the APAP Products within this district and aimed at a consumer market within this district.

82. Defendants knew, or in the exercise of reasonable care should have known, that the APAP Products were defectively and unreasonably designed and/or manufactured, and/or marketed, and were unreasonably dangerous and likely to injure persons that were prenatally exposed to them.   Defendants

knew or should have known that Plaintiff Mother was unaware of the dangers and defects inherent in the APAP Products when she was ingesting them during her pregnancy with Plaintiff Minor.

83. At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, promotion, and sale of the APAP Products. Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using the APAP Products during pregnancy and appropriate, complete, and accurate warnings concerning the potential adverse effects of the APAP Products and, in particular, the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to the APAP Products.

84. At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of APAP Products ingestion while pregnant and, specifically, the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP Products.

85. Defendants failed to provide any kind of warning to pregnant consumers, like Plaintiff Mother, about the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP Products.

86. Accordingly, at all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that use of the APAP Products could cause Plaintiffs' injuries, and thus, create a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

87. As such, Defendants breached their duties of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, labeling, supply, promotion, advertisement, packaging, sale, and distribution of the APAP Products, in that Defendants manufactured and produced defective APAP Products, which carry the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to the APAP Products; knew or had reason to know of the defects inherent in the APAP Products; knew or had reason to know that a user's or consumer's use of the APAP Products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.

88. Defendants had a duty to disclose the truth about the risks associated with the APAP Products in their promotional efforts outside of the context of labeling. Defendants were negligent in their promotion of the APAP Products outside of the labeling context by failing to disclose material risk information as part of their promotions and marketing of the APAP Products, including through the internet, television, and print advertisements.

89. Despite Defendants' ability and means to investigate, study, and test the APAP Products and to provide adequate warnings, Defendants failed to do so.  Indeed, Defendants wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of APAP Products.

90. Defendants' negligence included:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the APAP Products while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of the APAP Products and the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to the APAP Products, and, consequently, the risk of serious harm associated with human use of the APAP Products during pregnancy;

b. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not the APAP Products were safe for intended consumer use and unborn children;

c. Failing to provide adequate instructions, guidelines, and safety precautions to those persons Defendants could reasonably foresee would use the APAP Products;

d. Failing to disclose to Plaintiff Mother, users, consumers, and the general public that use of the APAP Products during pregnancy presents severe

risks of neurodevelopmental disorders in children exposed to the APAP Products prenatally;

e.   Failing to warn Plaintiff Mother, users, consumers, and the general public that the APAP Products' risk of harm was unreasonable and that there were safer and effective alternative medications or treatments available to Plaintiff Mother and other users and/or consumers;

f.   Representing that the APAP Products were safe for their intended purposes for pregnant women when, in fact, Defendants knew or should have known the APAP Products were not safe for their intended purposes;

g.   Declining to make or propose any changes to the APAP Products' labeling or other promotional materials that would alert users, consumers, and the general public of the risks of the APAP Products, including to pregnant women;

h.   Advertising, marketing, and recommending the use of the APAP Products, while concealing and failing to disclose or warn of the dangers known by Defendants to be caused by the use of or exposure to the APAP Products;

i.   Continuing to disseminate information to consumers and the general public, which indicates or implies that the APAP Products are not unsafe for pregnant consumer use; and

j.    Continuing the manufacture and sale of the APAP Products with the knowledge that the APAP Products were unreasonably unsafe and dangerous.

91.  Defendants knew and/or should have known that it was foreseeable that children such as Plaintiff Minor would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of the APAP Products to consumers, like Plaintiff Mother.

92.  Plaintiff Mother did not know the nature and extent of the injuries that could result in her child from the intended use of and/or exposure to the APAP Products prenatally.

93.  Defendants' negligence was the proximate cause of Plaintiffs' injuries, i.e., absent Defendants' negligence, Plaintiff Minor would not have developed ASD.

94.  Defendants' conduct, as described above, was reckless.   Defendants regularly risked exposing Plaintiff Mother to the APAP Products while pregnant with Plaintiff Minor, with full knowledge of the dangers of the APAP Products and that it could cause ASD in Plaintiff Minor.  Defendants made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff Mother.  Defendants' reckless conduct therefore warrants an award of punitive damages.

95. As a direct and proximate result of Defendants placing the defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

<u>**CLAIM THREE**</u>
**BREACH OF EXPRESS WARRANTY**

96. Plaintiffs incorporate by reference the allegations in all prior paragraphs.

97. At all material times, Defendants manufactured, marketed, sold, distributed, and otherwise placed into the stream of commerce the APAP Products. These actions were under the ultimate control and supervision of Defendant.

98. In advertising, marketing, and promoting the APAP Products to consumers, like Plaintiff Mother, Defendants expressly warranted that the APAP Products were safe for use and reasonably fit for their intended purposes. In advertising, marketing, and otherwise promoting the APAP Products, Defendants intended for pregnant consumers to rely upon their representations regarding safety and fitness, in an effort to induce them to purchase and consume the APAP Products during pregnancy to relieve pain.

99. Defendants expressly warranted to Plaintiff Mother and pregnant consumers that the APAP Products were safe for ingestion during pregnancy.

100. Defendants had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling,

distributing, marketing, promotion, sale, and release of the APAP Products, including a duty to:

a.   ensure that the APAP Products did not cause users and their unborn children unreasonably dangerous side effects;

b.   warn of dangerous and potentially incurable side effects; and

c.   disclose adverse material facts, such as the true risks associated with the use of and exposure to APAP during pregnancy, when making representations to users, consumers, and the general public, including Plaintiff Mother.

101. Defendants had the ability to properly disclose the risks associated with APAP Product usage during pregnancy through multiple channels, not just labeling.

102. At all relevant times, Defendants expressly represented and warranted to the purchasers of the APAP Products, by and through statements made by Defendants in labels, publications, brochures, and other written materials intended for consumers and the general public, that the APAP Products were safe to human health and the environment, effective, fit, and proper for their intended use.  Defendants advertised, labeled, marketed, and promoted the APAP Products, representing the quality to consumers and the public in such a way as to induce their purchases or use, thereby making an express warranty that the APAP Products would conform to the representations.

103. The representations about the APAP Products, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

104. Defendants breached express representations and warranties made to Plaintiff Mother, with respect to the APAP Products, including the following:

    a.  Defendants represented through their labeling, advertising, and marketing materials that the APAP Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of APAP and by expressly limiting the risks associated with use within their warnings and labels; and

    b.  Defendants represented that the APAP Products were safe for use and intentionally concealed information that demonstrated that APAP carries the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP, and that the APAP Products, therefore, were not safer than alternatives available on the market.

105. Plaintiff Mother detrimentally relied on the express warranties and representations of Defendants concerning the safety and/or risk profile of APAP in deciding to purchase the APAP Products.   Plaintiff Mother reasonably relied upon Defendants to disclose known defects, risks,

dangers, and side effects of APAP. Plaintiff Mother would not have purchased or used the APAP Products had Defendants properly disclosed the risks associated with the APAP Products, either through advertising, labeling, or any other form of disclosure.

106. Plaintiff Mother had no knowledge of the falsity or incompleteness of Defendants' statements and representations concerning the APAP Products.

107. Plaintiff Mother used and/or was exposed to APAP as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendant.

108. Had the warnings, labels, advertisements, or promotional material for the APAP Products accurately and adequately set forth the true risks associated with the use of such Products, including Plaintiffs' injuries, rather than expressly excluding such information and warranting that the APAP Products were safe for their intended use, Plaintiffs could have avoided the injuries complained of herein.

109. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

## CLAIM FOUR
### BREACH OF IMPLIED WARRANTY

110. Plaintiffs incorporate by reference the allegations in all prior paragraphs.

111. At all material times, Defendants manufactured, marketed, sold, distributed, and otherwise placed the APAP Products into the stream of commerce.

112. At all material times, Defendants intended for the APAP Products to be consumed and ingested by pregnant women, like Plaintiff Mother; and Defendants impliedly warranted that the APAP Products and their component parts were of merchantable quality, safe, fit for such use, and adequately tested.

113. Defendants were aware that consumers, including Plaintiff Mother, would consume and ingest the APAP Products as directed by the Products' labels and promotional materials. Therefore, Plaintiff was a foreseeable user of the APAP Products.

114. But Defendants failed to disclose that APAP has dangerous propensities when used as intended and that use of the APAP Products carries an increased risk of developing severe injuries, including Plaintiff Minor's injuries.

115. The APAP Products were expected to reach, and did in fact reach consumers, including Plaintiff Mother, without substantial change in the condition in which they were manufactured and sold by Defendant.

116. Plaintiff Mother was an intended beneficiary of the implied warranties made by Defendants to purchasers of the APAP Products.

117. In reliance upon Defendants' implied warranties, Plaintiff Mother used the APAP Products as indicated, and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

118. Defendants breached implied warranties to Plaintiffs in that the APAP Products were not of merchantable quality, nor were they safe or fit for their intended use or adequately tested.

119. The harm caused by the APAP Products far outweighed their benefit, rendering the APAP Products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

120. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

**CLAIM FIVE**
**VIOLATION OF CONSUMER PROTECTION LAWS**

121. Plaintiffs incorporate by reference the allegations in all prior paragraphs.

122. Plaintiff Mother purchased and used the APAP Products for primarily personal use and pain relief during pregnancy, thereby suffering ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

123. Had Defendants not engaged in the deceptive conduct described in this Complaint, Plaintiff would not have purchased and/or paid for the APAP Products, and Plaintiffs would not have incurred related injury medical costs.

124. Defendants engaged in wrongful conduct while at the same time obtaining under false pretenses moneys from Plaintiff for the APAP Products. Those moneys would not have been paid had Defendants not engaged in unfair and deceptive conduct.

125. Defendants engaged in the following unfair methods of competition or deceptive acts or practices, which are proscribed by law:

    a. representing that goods or services have characteristics, ingredients, uses, benefits, or qualities they do not have;

    b. advertising goods or services with the intent not to sell them as advertised; and

    c. engaging in fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding.

126. Plaintiffs were injured by the cumulative nature of Defendants' conduct. The cumulative effect, directed at patients, physicians, and consumers, was to create demand for and sell the APAP Products. Each aspect of Defendants' conduct combined to artificially create sales of the APAP Products.

127. Defendants had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the APAP Products.

128. Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to consumers, including Plaintiff Mother, constitute unfair and deceptive acts and trade practices in violation of the federal and state consumer protection statutes listed below.

129. Defendants' actions, as complained of in this Complaint, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of the federal and state consumer protection statutes listed below.

130. Defendants have engaged in unfair competition, or unfair or deceptive acts or trade practices, or have made false representations under the following statutes:

- 15 U.S.C. §§ 2301–12 (1982); and
- A.R.S. § 44-1521 *et seq*.

131. To protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising, Defendant, as the supplier, manufacturer, advertiser, and seller, is subject to liability under the above legislation enacted against unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

132. By knowingly and falsely representing that the APAP Products were fit to be used for the purposes for which they were intended—when in fact they were defective and dangerous—and by other acts alleged, Defendants violated the above statutes, enacted to protect consumers against unfair, deceptive,

fraudulent, and unconscionable trade and business practices, and false advertising.

133. Defendants' actions and omissions are uncured or incurable, deceptive acts under the above legislation.

134. Defendants had actual knowledge of the defective and dangerous conditions of the APAP products but failed to take any action to cure such defective and dangerous conditions.

135. Plaintiff Mother relied upon Defendants' misrepresentations and omissions in determining which APAP Products (if any) to ingest.

136. Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to consumers constituted unfair and deceptive acts and practices.

137. By reason of the unlawful acts in which Defendants engaged, and as a direct and proximate result thereof, Plaintiffs have suffered ascertainable losses and damages.

138. As a direct and proximate result of Defendants' violations of the above-listed legislation, Plaintiffs have sustained economic losses and other damages and are entitled to statutory and compensatory damages in an amount to be proven at trial.

## **PUNITIVE DAMAGES**

139. Plaintiffs incorporate by reference the allegations in all prior paragraphs.

140. Defendants failed to adequately test and study the APAP Products to determine and ensure that the APAP Products were safe and effective prior to releasing them for sale for human consumption.

141. Further, Defendants continued to manufacture and sell the APAP Products after obtaining knowledge and information that they were defective and unreasonably unsafe in that they did not include adequate warnings.

142. Defendants were aware of the probable consequences of the dangerous and defective product, including the risk of neurodevelopmental disorders in children, such as ASD and ADHD, when they suffered prenatal exposure.

143. At all material times, Defendants knew or should have known that the APAP Products were inherently dangerous with respect to the following: the risk of neurodevelopmental disorders in children, such as ASD and ADHD, when they suffered prenatal exposure; pain and suffering; loss of life's enjoyment; and unsuccessful treatments to cure the conditions proximately related to the use of the APAP Products, as well as the other permanent and lasting severe personal injuries.

144. Defendants' misrepresentations included knowingly withholding material information from consumers and the public, including Plaintiff Mother, concerning the safety and efficacy of the APAP Products, which deprived Plaintiff Mother of vitally necessary information with which to make a fully informed decision about whether to use the APAP Products.

145. At all material times, Defendants also knew and recklessly and/or intentionally disregarded the fact that the APAP Products can cause debilitating and life-altering side effects with greater frequency than safer alternative methods, products, and/or treatments.  But Defendants recklessly failed to advise the medical community and the general public, including Plaintiff Mother, of that fact.

146. At all material times, Defendants intentionally misstated and misrepresented data; and Defendants continues to misrepresent data so as to minimize the perceived risk of injuries and the rate of complications caused by or associated with the APAP Products.

147. Notwithstanding the foregoing and the growing body of knowledge and information regarding the true and defective nature of the APAP Products, with their increased risk of side effects and serious complications, Defendants continue to aggressively market the APAP Products to consumers, including the pregnant community at large, without disclosing the true risk of the complications and side effects.

148. When Plaintiff Mother consumed the APAP Products and since then, Defendants have known the APAP Products were defective and unreasonably dangerous without an adequate warning.  But Defendants continued to manufacture, produce, assemble, market, distribute, and sell the APAP Products to the pregnant community so as to maximize sales and profits at the expense of the health and safety of expecting mothers in a

conscious, reckless, and/or intentional disregard of the likely and foreseeable harm caused by the APAP Products to members of the public, including Plaintiffs.

149. At all material times, Defendants have concealed and/or failed to disclose to the public the serious risks and the potential complications associated with the APAP Products, so as to ensure continued and increased sales and profits and to the detriment of the public, including Plaintiffs.

150. Defendants' acts and omissions are of such character and nature so as to entitle Plaintiffs to an award of punitive damages in accordance with applicable statutory and common law.   Defendants' conduct shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, raising the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants individually, and jointly and severally.   Plaintiffs also request compensatory damages, punitive damages, or enhanced compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **PRAYER FOR RELIEF**

Plaintiffs demand judgment against Defendants, individually, and jointly and severally, and prays for the following relief in accordance with applicable law and equity:

i.      Compensatory damages to Plaintiffs for past, present, and future damages, including pain and suffering for severe and permanent personal

injuries sustained by Plaintiffs, permanent impairment, mental pain and suffering, loss of enjoyment of life, health and medical care costs, economic damages, together with interest and costs as provided by law;

ii.    Restitution and disgorgement of Defendants' profits;

iii.   Punitive or enhanced compensatory damages;

iv.    Reasonable attorneys' fees as provided by law;

v.     Past and future costs of all proceedings;

vi.    All ascertainable economic damages;

vii.   Prejudgment interest on all damages as allowed by law; and

viii.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable with the maximum number of jurors permitted by law.

RESPECTFULLY SUBMITTED this 27th day of July 2022.

**O'STEEN & HARRISON, PLC**

Jonathan V. O'Steen
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
W. Roger Smith, IIII

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of July 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

/s/ Jonathan V. O'Steen

c:\sync\clients\taylor, frances\pleadings\complaint\complaint.docx